# EXHIBIT A

AG's Copy

VERIFIED COMPLAINT

I, JON ROBERT ADAMS, hereby declare under the penalty of Perjury pursuant to TITLE 17-A SECTION(s) 451 & 452 under Maine Law that the facts alleged in the following foregoing COMPLAINT are true and correct to the very best of my knowledge.

Dated on this 25th day of October, 20 19.

_____
Jon R. Adams
COMPLAINANT

Jon R. Adams
MDOC No. 13557
Maine State Prison
807 Cushing Rd.
Warren, ME. 04864-4600




Subscribed and sworn to before me,

_____
NOTARY PUBLIC

Fremont F. Anderson
Notary Public, State of Maine
My Commission Expires April 12, 2025

Dated: October 25, 2019

STATE OF MAINE

SUPERIOR COURT

KNOX ,ss

Docket No.

JON ROBERT ADAMS
    Plaintiff,

v.

MATTHEW MAGNUSSON; Warden of Maine State Prison;
RANDALL LIBERTY; Commissioner of Maine Dept. of Corrections;
THOMAS AVERILL; Correctional Sergeant at Maine State Prison;
MATTHEW LeCLAIR; Correctional Officer at Maine State Prison.

Sued in their individual & official capacities.
    Defendants.

## COMPLAINT WITH JURY TRIAL DEMANDED
### DAMAGES & RELIEF REQUESTED

I. Introduction to the case

This is a CIVIL ACTION being filed against Defendants RANDALL LIBERTY, MATTHEW MAGNUSSON, THOMAS AVERILL and MATTHEW LeCLAIR, brought by the Plaintiff JON ROBERT ADAMS.The defendants are all officials of the MAINE DEPARTMENT OF CORRECTIONS. At all times during this action, the plaintiff Jon Robert Adams was incarcerated at the MAINE STATE PRISON in Warren, Maine under the care & supervision of all-named defendants. The plaintiff hereby states that the defendants displayed "RECKLESS DISREGARD" for his personal safety, FAILED TO TAKE REASONABLE MEASURES TO ABATE A KNOWN SERIOUS RISK and FAILED TO TAKE REASONABLE MEASURES TO PROTECT the plaintiff from that risk. Plaintiff asserts that the defendants were NEGLIGENT and DELIBERATELY DISREGARDED his concern(s) for his personal safety after the plaintiff informed them of a serious, credible THREAT that was made to the plaintiff by a known dangerous prisoner serving a life sentence for double-murder.The plaintiff hereby states that as a direct result of the defendant's FAILURES, NEGLIGENCE & DISREGARD, plaintiff was VICIOUSLY and BRUTALLY STABBED in the FACE, FOREHEAD, NOSE, and EYES while sleeping by this said dangerous prisoner. The plaintiff was stabbed with TWO (2) BLUE BALLPOINT PENS. As a result of the stab wounds, plaintiff sustained SEVERE injuries with the worse being his RIGHT EYE. Plaintiff was immediateley examined by the prison's Medical staff and was immediately ordered to the Emergency Room. Due to the severity of plaintiff's injuries and due to the severity of the injury to plaintiff's right eye, plaintiff had to be seen at two (2) different hospitals. Right after plaintiff was stabbed, plaintiff's right eye immediately moved to the an "Upper-Right" position thus being out-of-line with his left eye. Plaintiff also immediately began

(1)

having "Double-Vision" out of his right eye. Plaintiff had to be seen immediatley by a Proffessional Eye Care Specialist. The Eye Care Specialist diagnosed plaintiff with "THIRD CRANIAL NERVE (Oculomotor nerve) PALSY". The Eye Care Specialist informed the plaintiff that if this injury doesn't fix itself within a six (6) month period, then it will PERMANENTLY damaged. Outside of the severe brutal physical injuries plaintiff sustained, plaintiff is also severely suffering from heavy mental & emotional scars and damages. Plaintiff asserts that the defendants are legally liable for his injuries as this Honorable Court will see from the facts to this claim in plaintiff's VERIFIED COMPLAINT.

## II. Jurisdiction & Venue

The Court has jurisdiction over the plaintiff's complaint and venue is proper. The events given rise to this action occurred in KNOX COUNTY, MAINE. The plaintiff at all times relevant was in the Town of WARREN.

## III. Parties Involved

The plaintiff, Jon Robert Adams, at all times relevant was confined by the Maine Department of Corrections (MDOC) at the Maine State Prison (MSP) located in Warren, Maine. Plaintiff is serving a 34-month sentence and is due to be released at some point in 2021.

Defendant Randall Liberty, at all times relevant, was the Commissioner for the Maine Department of Corrections.

Defendant Matthew Magnusson, at all times relevant was the Warden of the Maine State Prison employed by the Maine Department of Corrections.

Defendant Thomas Averill, at all times relevant was a Sergeant at the Maine State Prison employed by the Maine Department of Corrections.

Defendant Matthew LeClair, at all times relevant was a Correctional Officer at the Maine State Prison employed by the Maine Department of Corrections.

Defendants Averill and LeClair at all relevant times were acting under color of state law and are being sued in their individual capacities.

## IV. Exhaustion of Available Remedies

Plaintiff exhausted his Administartive remedies and filed a NOTICE OF CLAIM with the Office of the Maine Attorney General before the filing of this complaint. Plaintiff filed and an administrative prisoner Grievance with the Prison's Grievance Review Officer.

(2)

V. Pro'se Plaintiff

The Courts have generally held pro'se complaints to "Less stringent standards than formal pleadings drafted by Lawyers".

Erickson v. Pardus, 551 U.S. 89,94,127 S.Ct. 2197 (2007);

Hughes v. Rowe, 449 U.S. 5,9, 101 S.Ct. 173 (1980);

Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594 (1972);

Dellario v. Garland, 222 F.Supp. 2d 86, 89 (D.Me.2002).

Plaintiff is pro'se at this time and respectfully requests that this Court allow him lieniency. Plaintiff has very little knowledge of the law and did his very best with completing this complaint with very little legal material to use. The plaintiff is also able to function with ONE EYE (his left eye ONLY). Plaintiff has an eye patch covering his injured right eye that he was stabbed in.

## VI. Factual Statement

1. On April 26, 2019, plaintiff was sentenced to 34 months in the Maine Department of Corrections.

2. On April 29, 2019, plaintiff entered the Maine Correctional Center in Windham, Maine to begin his 34 month prison sentence.

3. On August 1, 2019, while plaintiff was at Maine Correctional Center, plaintiff attempted suicide by jumping off of the second floor tier onto the cement floor below. Plaintiff sustained a broken right Femur and right Hip as a result and was immediatley rushed to Maine Medical Center Hospital in Portland, Maine.

4. On August 6, 2019, plaintiff was discharged from Maine Medical Center and transported to the Infirmary unit at the Maine State Prison in Warren, Maine because plaintiff required 24/7 "Around-the-clock" medical care due to his injuries from his suicide attempt and the infirmary unit at the Maine State Prison is the ONLY Maine Dept. of Corrections facility that has 24-hour medical staff on-site.

5. Plaintiff's infirmary room is a room capable to hold three (3) prisoners. The infirmary provides each person with T.V.'s without a speaker inthem therefore requiring headphones to hear the T.V. The infirmary also provides the headphones as well for the T.V.s.

6. On August 26, 2019, the on-duty infirmary officer Officer Ried and medical staff moved another prisoner into the plaintiff's room. (there was already one prisoner in the room with plaintiff at this time, Prisoner S. Burton).

7. The prisoner that Officer Ried and Medical staff moved into the room was prisoner RICHARD B. UFFELMAN. Prisoner Uffelman is deemed a very dangerous prisoner.

(3)

8. Prisoner Uffelman is serving a LIFE-SENTENCE for DOUBLE-MURDER and has been incarcerated since the 1980's.

9. Based upon plaintiff recieving credible information from prison officials, since prisoner Uffelman has been incarcerated, while he was being housed at another Maine Dept. of Corrections facility, he attempted to KILL one of his cellmates by STRANGULATION while that prisoner was asleep.

10. On August 26, 2019, when prisoner Uffelman was moved into the plaintiff's infirmary room, Uffelman began to immediately accuse plaintiff of "stealing" his [Uffelman's] headphones (they were NOT). A verbal altercation began between plaintiff & Uffelman over this matter which therefore sparked the attention of medical staff CRYSTAL JOHNSON as well as another nurse named JACKIE.

11. Medical staff Crystal immediately came to plaintiff's room to see what was taking place, I informed Crystal & Jackie that Uffelman was accusing plaintiff of "Stealing" his [Uffelman's] headphones.

12. Nurse Crystal informed Uffelman that the headphones that plaintiff has are NOT his [Uffelman's] and that she gave them to plaintiff when plaintiff moved into the room.

13. Prisoner Uffelman continued to INSIST that the headphones belonged to him and that "HE WILL TAKE THEM FROM PLAINTIFF"! Nurse Crystal informed Uffelman that "HE WILL NOT TAKE THEM FROM PLAINTIFF"! As soon as Crystal walked away, prisoner Uffelman immediately went into the plaintiff's personal area, and UNPLUGGED plaintiff's headphones from plaintiff's radio.

14. Plaintiff immediately yelled for nurse Crystal to return bck to the room and plaintiff told her that Uffelman had just taken his headphones.

15. Nurse Crystal ORDERED Uffelman to give the plaintiff back his headphones. Uffelman REFUSED. Crystal then OREDERED ORDERED Uffelman to give them to her. He argued with her briefly, however complied and gave the headphones to her. Crystal handed plaintiff back his headphones and said she was going to get the unit officer.

16. Before nurse Crystal was able to walk off, prisoner Uffelman stated to her "YOU BETTER GET ME OUT OF THIS ROOM OR I WILL KILL HIM"[referring to plaintiff].

17. Nurse Crystal immediately went to the infirmary officer Officer Ried and informed him that prisoner Uffelman had threatened to KILL the plaintiff.

18. Officer Ried immediately reported the threat to his Supervisor as well as immediately logged the threat into the unit's log book and the Maine Dept. of Corrections CORIS computer system under prisoner Uffelman's name.

19. Prisoner Uffelman was IMMEDIATELEY moved out of the plaintiff's infirmary room and placed into another room

(4)

to ensure the safety of the plaintiff and to ensure that prisoner Uffelman and the plaintiff are completely kept away from each other.

20. It was believed by medical and the officer that removed Uffelman out of the plaintiff's room on August 26, 2019, (Officer Ried) that Uffelman's threat to "KILL THE PLAINTIFF" was very credible considering Uffelman's crimes(Double-Murder) and considering that he attempted once already to kill a cell-mate since he's been incarcerated.

21. On September 14, 2019, the on duty infirmary officer Matthew LeClair, tells the plaintiff that he's moving prisoner Uffelman back into plaintiff's room (This comes just NINTEEN (19) days since prisoner Uffelman was moved out of the plaintiff's room for threatening to KILL the plaintiff).

22. Plaintiff immediately tells officer LeClair that Uffelman CANNOT and SHOULD NOT be moved back into my room and plaintiff informed officer LeClair that due to the threat that was made, to the plaintiff's life, Uffelman needed to be KEPT AWAY from the plaintiff.

23. Plaintiff told LeClair that it WOULDN'T BE A SAFE SITUATION.

24. Officer LeClair tells the plaintiff:"I need to make room for another prisoner coming from the hospital"! LeClair goes on to tell the plaintiff that the Plaintiff"DOESN'T HAVE A CHOICE IN THE MATTER" and tells plaintiff "NOT TO TELL HIM HOW TO DO HIS JOB"!

25. Plaintiff doesn't want confrontation wit officer LeClair so plaintiff goes back to watching television and prisoner Richard Uffelman is moved back into the plaintiff's room.

26. September 14, 2019, at approximateley 10:00 p.m. prisoner Uffelman gets into a verbal confrontation with plaintiff's other roommate that was already in the room (Prisoner S. Burton).

27. Plaintiff asks the other roommate what was going on? Burton tells the plaintiff that Uffelman was trying to take his[Burton's headphones from him.

28. Plaintiff politely asks Uffelman to "Please stop trying to BULLY Burton out of his headphones" and plaintiff stated to Uffelman:"You just tried to do the same thing to me 19 days ago".

29. Prisoner Uffelman tells the plaintiff to "SHUT THE F**K UP" and calls plaintiff a "RAT"!

30. During this time, the on duty infirmary officer, Officer McArthur did hear noise and verbal altercation taking place in the room and officer McArthur comes to the room.

31. Plaintiff tells officer McArthur that Uffelman was trying to "Bully" prisoner Burton(the other roommate) out of his headphones and that Uffelman was just moved out of the room on August 26,for

(5)

doing the exact same thing to plaintiff, as well as threatened to KILL plaintiff"!

32. Officer McArthur IMMEDIATELY calls for the Supervisor in charge VIA his portable radio.

33. The on duty Supervisor responds,(Sergeant Thomas Averill).

34. Sergeant Averill stands in the doorway of plaintiff's room and asks plaintiff "What's going on"? Plaintiff tells Averill in detail what was taking place in the room. Plaintiff also tells Sergeant Averill that Uffelman should NOT of been moved back in the room earlier today because he threatened plaintiff's life and plaintiff told Averill that the incident and threat was logged & documented in the unit log book and in the CORIS computer system on August 26, 2019, under Uffelman's name by officer Ried.

35. Plaintiff tells Sergeant Averill that it's "NOT A SAFE SITUATION with Uffelman being in the room" and that "One of us needs to be moved out".

36. Sergeant Averill tells Uffelman to "Knock the sh*t off" and tells us that "If we both have anything we want to say to each other to "Get it off our chest now" while he's [Averill] standing here"! Averill states that he's "Not moving anyone this time of night, and if he [Averill] has to come back then someone is going to segregation"!

37. September 15, 2019, at approximately 1:15 a.m. plaintiff falls asleep.

38. September 15, 2019, at approximateley 3:30 a.m. while plaintiff was asleep, plaintiff was awakened to Uffelman STABBING him with TWO (2) BLUE BALLPOINT PENS!

39. Plaintiff was being STABBED on his FACE, FOREHEAD, NOSE and EYES. Plaintiff's right eye took a DIRECT STAB while Uffelman stabbed plaintiff just below plaintiff's left eye just missing plaintiff's left eye directly.

40. Plaintiff IMMEDIATELY began screaming for "HELP"! Plaintiff was bleeding very badly and bleeding out of his right eye also. Officer McArthur was just doing his 3:30 a.m. room checks heard plaintiff screaming for HELP and also noticed prisoner Uffelman at the head of plaintiff's bed(where plaintiff's head was) standing over the plaintiff.

41. Officer McArthur ORDERS Uffelman to "GET AWAY FROM HIM"! (plaintiff). McArthur immediately radio's for Sergeant Averill to return back.

42. Prisoner Uffelman complies with the direct order to get

(6)

away from the plaintiff. Upon the arrival of Sergeant Averill, McArthur and Averill ORDER Uffelman to "DROP BOTH OF THE PENS"! Uffelman complies and drops the pens on the floor.

43. Plaintiff began to IMMEDIATELY have "DOUBLE-VISION" of his right eye and plaintiff's right eye IMMEDIATELY went to an "UPPER-RIGHT" position(out-of-line from his left eye).

44. Prisoner Uffelman is brought to segregation and plaintiff is immediately examined by the on duty nurse Megan Cox. Megan tells plaintiff that he needs to immediately be seen at the Emergency Room and Nurse Megan calls the on-call Doctor, Doctor Robert Clinton.

45. September 15, 2019, approximately 4:10 a.m. plaintiff is transported to Pen Bay Hospital. Officer McArthur accompanies plaintiff to Pen Bay Hospital. On the way to the hospital plaintiff VOMITS inside of the prison's transport vehicle due to plaintiff's pain being so SEVERE and EXCRUCIATING.

46. Plaintiff is seen and examined by the Doctors at Pen Bay Hospital. Plaintiff is given tests & exams for his injured right eye and his stab wounds are cleaned.

47. Doctors at Pen Bay Hospital tell the plaintiff that he needs to be seen by a proffessional Eye Care Specialist IMMEDIATELY, and the doctors locate plaintiff an Eye Care Specialist that was currently at Maine General Hospital In Augusta, Maine and said he was willing to wait for the plaintiff to arrive.

48. Plaintiff is taken from Pen Bay Hospital in Rockport, Maine to Maine General Hospital in Augusta to meet the Eye Care Specialist.

49. September 15, 2019, approximately 8:30 a.m., plaintiff arrives at Maine General Hospital in Augusta. Plaintiff meets with the Eye Care Specialist Doctor WILLIAM LAVIN. Doctor Lavin is directly located out of Maine General Eye Center in Fairfield, Maine.

50. Doctor William Lavin immediately takes photos of plaintiff's stab wounds and injured right eye that plaintiff was stabbed in.

It was presumed at first by Doctor Lavin that plaintiff was going to need eye surgery, however, after Doctor Lavin completed further tests, exams and scans of plaintiff's eye, plaintiff did not need eye surgery however came real close to needing it.

51. Doctor William Lavin diagnosed plaintiff with "THIRD CRANIAL NERVE (occulomotor nerve) PALSY". Doctor Lavin informed the plaintiff that this is something that's going to have to fix itself, usually within a six (6) month period. However, Doctor Lavin went on to tell the plaintiff that there's a very HIGH possibility that it may NOT, and if that's the case then this injury will be PERMANENT.

(7)

52. Plaintiff continues to suffer with double vision in his right eye and his right eye continues to be stuck in an "Upper-Right" position out-of-line from his un-injured left eye.

53. Doctor Lavin patches up the plaintiff's injured right eye and schedules plaintiff for a follow-up appointment at his office in Fairfield, Maine.

54. Plaintiff is discharged from Maine General Hospital in Augusta and returned back to the infirmary unit at Maine state Prison.

55. October 2, 2019, plaintiff sends a letter to the Maine Dept. of Corrections Director of Classifications Ben Beal requesting an IMMEDIATE transfer back to the Maine Correctional Center (where plaintiff originally came from) upon his discharge from the prison infirmary due to being stabbed while sleeping and overall not feeling safe at Maine State Prison. Plaintiff also stated that being at Maine Correctional Center would keep him close to his Mother & Daughter.

56. October 3, 2019, plaintiff completes a Prisoner Grievance Form regarding being stabbed while sleeping and explained how this should've NEVER happened and how this could've been prevented and WASN'T. Plaintiff submits the Grievance to the supervisor that had "Jurisdiction" over the matter being grieved thus being Thomas Averill.

57. On October 5, 2019, Sergeant Thomas Averill returns plaintiff back his grievance. Plaintiff reviews Averill's response and sees that it's clear & obvious that Sergeant Averill FAILED to properly investigate plaintiff's complaint. Averill States on plaintiff's grievance the following: " No enemy issue comment forms were filled out. There was no documented reason both inmates involved that would have prevented this incident from happening".

58. As plaintiff has stated in this verified complaint, there was DOCUMENTATION regarding prisoner Uffelman threatening plaintiff's life on August 26, 2019. Officer Ried on August 26, 2019, DOCUMENTED the threat into the infirmary unit officer's log book and in the Maine Dept. of Corrections CORIS computer system.

59. As plaintiff has stated in this verified complaint, plaintiff told Officer LeClair about the threat on September 14, 2019, when LeClair told plaintiff he was moving Uffelman back into the plaintiff's room. Plaintiff told LeClair that it wouldn't be a safe situation.

60. Sergeant Averill, upon his review of the plaintiff's grievance clearly FAILED to review Officer Ried's entry in CORIS on August 26, 2019, and clearly FAILED to review the unit log book entry completed by Officer Ried.

61. On October 6, 2019, plaintiff forwards the Grievance to the facility's Grievance Review Officer (At this time who was Sergeant Millard). Plaintiff photocopied it before forwarding it.

(8)

62. Pursuant to the Maine Dept of Corrections Prisoner Grievance Policy, the Grievance Review Officer has Thirty (30) DAYS or LESS to investigate it, answer it, and return it back to the prisoner so the prisoner can continue to follow the Grievance process to the next level if the grievance is not dismissed. Prisoners cannot appeal a dismissal.

63. On October 9, 2019, plaintiff is brought to see the outside Eye Care Specialist for his first follow-up appointment. Doctor William Lavin, 4 Sheridan Drive, Fairfield, Maine 04937.

64. Doctor Lavin does more eye exams & tests and also does a prescription for eye glassesfor the plaintiff. Doctor Lavin continued to inform the plaintiff that this particular eye injury may or may not fix itself and has a very high possibility of being PERMANENTLY DAMAGED.

65. Doctor Lavin tells the plaintiff that he [Doctor Lavin] does still have the photos that he took on September 15, 2019, when he first saw the plaintiff. He told the plaintiff that he would hold onto them upon asking him to.

66. On October 9, 2019, the Director of Nursing Danielle, Nurse Vanessa and Officer LeClair enter plaintiff's room when plaintiff returned back from his eye care appointment and tell the plaintif the following: " We need to bring prisoner Richard Uffelman back to the infirmary from segregation because he's not "Doing well" and needs to be under the attention of medical staff ".

67. Plaintiff is told that Uffelman will "Still remain on segregation status" and "Will NOT be coming out of his room the same time as the infirmary unit prisoners and that he will be secured in his room 23 hours-a-day".

68. Plaintiff tells all three that "As long as Uffelman WILL NOT be coming into plaintiff's room or anywhere near plaintiff then fine".

69. Plaintiff was "Given the option" to either remain in the infirmary or move out to the prison's "General population".

70. On October 10, 2019, plaintiff asked the on duty infirmary officer on this dateto look in CORIS to see if there was a "KEEP-SEPERATE" in place between plaintiff & Uffelman. Plaintiff was told that there was NOT a "keep-seperate" in place.

71. Plaintiff was told by the prison's S.I.I. Investigators on September 16, 2019, (the following day after the plaintiff was stabbed) that THEY WERE GOING TO ISSUE A KEEP-SEPERATE between prisoner Uffelman & plaintiff to ENSURE THAT PLAINTIFF WAS KEPT AWAY FROM UFFELMAN AT ALL TIMES following this incident occuring.

72. Because plaintiff was told that the two (2) prison S.I.I. investigators were going to issue a KEEP-SEPERATE between him and Uffelman, the plaintiff was under the impression that they would do what they said they were going to do and plaintiff TRUSTED them.

73. Plaintiff doesn't know the names of the two S.I.I. Officers.

(9)

and therefore is unable to name them currently at this time.

74. The two S.I.I. prison investigators asked plaintiff if plaintiff wanted to pursue criminal charges on prisoner Uffelman. Plaintiff declined due to the ONLY reason being that Richard Uffelman Is serving a LIFE SENTENCE and NEVER being released anyway. Plaintiff feels for that reason alone it would be pointless. Plaintiff may however file a civil suit against Uffelman for ASSAULT/BATTERY.

## VII. Claims For Relief

### A. Negligent Failure to Protect

1. Defendants Averill and LeClair owed Plaintiff a duty of reasonable care to protect him from assaults by other prisoners.

2. Defendants Averill and LeClair breached that duty by failing to provide protection when Plaintiff informed them of the serious threat to his life by the same prisoner that was moved back into Plaintiffs room nineteen (19) days after and informed both Defendants that the threat was documented in the units log book and in the Maine Dept. of Corrections CORIS computer system on August 26, 2019 supporting plaintiff's fear of being attacked. Both Defendants failed to review the log book and CORIS.

3. The breach of duty resulted in serious physical, mental and emotional injuries and damages to the Plaintiff.

4. The breach of duty proximately caused those damages. Had both defendant's reviewed CORIS and/or the units log book, this BRUTAL attack on plaintiff could have been prevented.

### B. Failure to Protect/Deliberate Disregard

5. The failure of Defendant LeClair to act on his knowledge of a substantial risk of serious harm to Plaintiff when Plaintiff told him that Uffelman threatened to "Kill" Plaintiff and that the threat was logged and it wouldn't be a safe situation, violated Plaintiff's Eighth Amendment right.

6. The failure of Defendant Averill to act on his Knowledge of a substantial risk of serious harm to Plaintiff after plaintiff informed him of the threat to his life and the failure to seperate plaintiff and Uffelman when requested due to it being an unsafe situation for the Plaintiff, violated Plaintiff's Eighth Amendment right.

7. As a result of Defendant's LeClair & Averill's failures, the Plaintiff was VICIOUSLY assaulted (stabbed) and recieved serious physical, mental & emotional injuries.

## VIII. Mental/Emotional Suffering(s)

Due to Plaintiff being viciously stabbed in the face and eye

(10)

while sleeping, plaintiff is now suffering from the following severe internal/external scars at minimum:

    1. Fear of falling asleep (especially around and/or in the presence of others);

    2. Trouble falling asleep (takes Plaintiff extremely longer than ever before);

    3. Plaintiff is suffering from nightmares and having trouble remaining asleep throughout the night like plaintiff used to;

    4. Waking up at least three (3) times a during the night, at times in night sweats;

    5. Plaintiff has to consistently on a regular-basis meet with the prison's Menttal Health Doctors/Clinicians;

    6. Plaintiff is suffering from SEVERE migranes and headaches as well as having constant pain and pressure in his injured right eye;

    7. Fear of anyone getting too close to him and/or within a certain distance of him;

    8. Plaintiff will be UNABLE to work certain types of jobs directly due to the severe damage from being stabbed in his right eye;

    9. Plaintiff has suffered and continues to suffer from Post Traumatic Stress Disorder (PTSD) as a direct result of being stabbed.

IX. Relef Requested

WHEREFORE, Plaintiff Jon Robert Adams, respectfully requests that this Court grant him the following relief:

A. Declare that Defendant's Averill & LeClair violated the Plaintiff's right(s) and were negligent within their duties. As a result, Plaintiff suffered SEVERE physical, mental and emotional injuries and damages;

B. Declare that Defendant's Averill & LeClair had a ~~reasonable~~ duty to provide the Plaintiff with reasonable care to protect him from assaults by other prisoners;

C. Award compensatory damages in the amount of TWO (2) MILLION DOLLARS ( $2,000,000) for plaintiff's physical, mental and emotional injuries;

(11)

Plaintiff is suffering from long-term physical, mental & emotional injuries as a result of the Defendants failures, negligence and disregard.

D. Award the Plaintiff punitive damages against each defendant; and

E. Grant Plaintiff such other relief as it may appear Plaintiff is entitled to.

Dated on this 25th day of OCTOBER 2019.

Signed: _____
Jon R. Adams
COMPLAINANT

Jon R. Adams
MDOC No. 13557
Maine State Prison
807 Cushing Rd.
Warren, ME. 04864-4600

(12)

STATE OF MAINE

TO: Office of the Maine Attorney General;

RE: The following Maine Dept. of Corrections Officials:

1. RANDALL LIBERTY; Commissioner of Maine Dept. of Corrections.
2. MATTHEW MAGNUSSON; Warden of Maine State Prison.
3. THOMAS AVERILL; Sergeant at Maine State Prison.
4. MATTHEW LeCLAIR; Correctional Officer at Maine State Prison.

To whom it may concern:

Pursuant to Maine law, Me.R. Civ.P. and under the MTCA, YOU ARE HEREBY NOTIFIED that I, Jon Robert Adams, prisoner No. 13557, incarcerated at the Maine State Prison in Warren, Maine, will be COMPLETING & FILING a FORMAL PERSONAL INJURY TORT COMPLAINT in the KNOX Co. SUPERIOR COURT located at 62 UNION ST. ROCKLAND, ME. 04841, against the following above-stated officials of the MDOC regarding SEVERE injuries I sustained on September 15, 2019. Attatched to this NOTICE OF CLAIM, please find a copy of events, timeline & statement that I intend to pursue legal action about.

Thank you very much for your time and attention with this matter.

Dated: 14 OCT 2019

Signed: _____
Jon R. Adams
COMPLAINANT

Jon Adams MDOC No. 13557
Maine State Prison
807 Cushing Road
Warren, ME. 04864-4600

Cc: Knox Co. Courts
    file

STATE OF MAINE

SUPERIOR COURT

KNOX, ss.

Docket No.

Jon R. Adams
    Plaintiff,

v.

Matthew Magnusson; et.al.;
    Defendants.

AFFIDAVIT OF JON ADAMS

Plaintiff, Jon Robert Adams, being first duly sworn, deposes as follows;

1. On October 3, 2019, I completed a Prisoner Grievance Form describing the incident of being stabbed while I was asleep by a prisoner that shouldn't have been moved back into my room. I described how the matter could've been prevented.

2. There were NO Prisoner Grievance Forms readily available in the unit between the dates of: September 15, 2019, and October 3, 2019.

3. From the date of this incident (9/15/19), I was asking unit officers, Sergeants and captains to "Please bring in Grievance forms because I need one and the Grievance policy/process is "time-sensative".

4. I continued to be told by unit officers sergeants and captains "Yep, we will get them in here", however, never did.

5. On October 3, 2019, finally I spoke to Sergeant Ruffner and complained to him of how there's NOT been any Grievances readily available in the unit when they should be available"! Sergeant Ruffner finally went and got some.

6. As stated in Plaintiff's verified complaint, Plaintiff completed his grievance and forwarded it to the supervisor having jurisdiction over the matter being greived (Defendant Thomas Averill).

7. On the Prisoner Grievance Forms at the top of the form, it has a place for the prisoner to fill out if the prisoner is filing the grievance after the respected 15 day time-limit.

8. I stated that it WASN'T POSSIBLE to complete a grievance within that time-limit and explained how there were NO grievances available and that I had been asking since the incident date.

(1)

9. On October 5, 2019, I recieved back my grievance from defendant Averill and immediately placed in in the in-house mail directed to the prison's Grievance Review Officer (sergeant Millard).

10. On October 24, 2019, I recieved my grievance back from the Grievance Officer indicating that I "Filed my grievance after the (15) day time limit and that it was possible for me to have filed a grievance within the time limit". NO appeal was provided to me.

11. This is NOT TRUE, and as indicated, plaintiff had explained why he was filing his grievance late. Plaintiff made efforts each day to get a grievance in the unit.

12. Then, the Grievance Review Officer states that "There has been an obvious abuse of the grievance process by me in that the reason for this "Abuse" was soley because I "Wrote outside of the Grievance designated area".

13. Based on these two (2) reasons, my grievance was DISMISSED.

14. I recieved a copy of the dismissal form on October 24, 2019.

15. Pursuant to the Prisoner Grievance Process Policy; 29.1, "A prisoner may NOT appeal a Dismissal" and I am NOT required to file another grievance based on this matter.

16. I was unaware that I couldn't write outside of the lines on the grievance form because pursuant to the Prisoner Grievance Process, a prisoner may NOT submit any attatcments with the grievance form.

17. On October 14, 2019, I mailed a "NOTICE OF CLAIM" to the Office of the Maine Attorney General in Agusta, Maine.

Dated: 25 OCT 2019

Jon R. Adams
AFFIANT

Dated on this _____ day of _____, 20____.

_____
Notary Public

ORIGINAL + PLAINTIFF'S COPY is NOT ORIZED

(2)

# NOTIFICATION OF DISMISSAL AND/OR RETURN

| TO: Adams, J | MDOC #: 13557 | DATE RECEIVED: 10/7/19 |
|---|---|---|

FROM: G. Millard, GRIEVANCE REVIEW OFFICER

## DISMISSAL

Your complaint has been dismissed due to the following:

☒ This matter is not grievable because:

☐ A separate appeal procedure exists.
☐ It does not directly affect you.
☐ A Departmental employee or contractor is not responsible.
☐ This is a complaint about a decision of the Grievance Review Officer.

☐ Your complaint is a duplicate of an earlier grievance.

☐ You complained about more than one (1) issue.

☐ If applicable, you did not attempt an informal resolution with a supervisor designated by the Chief Administrative Officer as having jurisdiction over the subject.

☒ Your grievance form was filed after the fifteen (15) day time limit had expired and it was possible for you to have filed within the time limit.

☐ Your grievance appeal form was filed after the fifteen (15) day time limit had expired and it was possible for you to have filed within the time limit.

☒ There has been an obvious abuse of the grievance process by you in that (specify reason):

### ADDITIONAL COMMENTS

Write in the designated area only.

**YOU MAY NOT APPEAL A DISMISSAL**

_____ 10/7/19
Signature of Grievance Review Officer          Date

## RETURN

☐ Your grievance form is being returned for you to provide sufficient information to show when the fifteen (15) day time limit began. You must supply this information and return this grievance form for processing within the original fifteen (15) day time limit.

_____          _____
Signature of Grievance Review Officer          Date

### NOTIFICATION PROVIDED

_____          _____
Signature of Prisoner, Resident, or Community Corrections Client          Date

_____     _____     _____
Signature of Staff          Date          Printed Name and Title

*Notification of Dismissal and/or Return*     DOC Form     A – 29.1 & 29.2 – C – B – 5/17/18R
J – 29.1 & 29.2 – B – B – 5/17/18R
ACC – 29.1 – B – B – 5/17/18R
JCC – 29.1 – B – B – 5/17/18R

**LEASE NOTE:** When Medical Staff moved this Prisoner out 2 WEEKS Prior to (on 8/26/19) this incident, they reported it to the infirmary officer C/O Ried. He reports documenting it in CORIS system under Prisoner Uffelman's Name As well As Writing it in the Unit Log Book.
This incident Could have been prevented if on 9/14 LeClair And other Supervisors would've Read the Log book in CORIS Computer System. I Also told them he threatened me. Prisoner Should've NEVER been put back in the room with me.

# MAINE DEPARTMENT OF CORRECTIONS

## PRISONER GRIEVANCE FORM
Policies 29.1 and 29.2

| TO BE COMPLETED BY GRIEVANCE REVIEW OFFICER: |
|---|
| DATE RECEIVED _____ |
| LOG NUMBER _____ |

Jon Robert Adams     13557     MSP; Infirmary Unit Room # 103 B
**Name**      **MDOC Number**      **Housing Unit**

A grievance must be filed with the Grievance Review Officer within fifteen (15) days of the matter being grieved. If you are filing after the expiration of the fifteen (15) day limit because it was not possible for you to have filed a grievance within the fifteen (15) day limit, explain what prevented filing within the time limit in the space below.

Explanation: There were No Grievances in the Unit From the date of this incident occurred on Until today. I've been Asking SGT's Wildes And Ruffner and Capt. Drake. Finally today SGT. Ruffner brought in Grievances - 10/3/19

### USE ONLY THE SPACE BELOW
Concisely state the specific nature of your complaint, including all persons and dates involved, and state the specific remedy requested. You must include information showing when the fifteen (15) day time limit began:

On 9/14/19 Prisoner Richard Uffelman Was Moved back into my room Just less than 2 Weeks after Medical Staff Jackie And Crystal Moved him out because he threatened to KILL ME over a pair of headphones. On 9/15/19 At approximately 03:30 am, While I was Sound Asleep, this Prisoner BRUTALLY, VICIOUSLY STABBED ME IN THE FACE AND RIGHT EYE WITH 2 BLUE BALLPOINT PENS! He NEVER should've been put back into my room After being moved out once for threatening to Kill me. Medical Nurses Jackie + Crystal Also Agree With this. This Prisoner is Serving a Life Sentence for DOUBLE MURDER and his threat toward me Was Serious. Taking another life Would Not matter to this Prisoner, and this Prisoner Should've been Kept Away from me. I have been diagnosed by an outside eye specialist with "Third-Nerve Palsy". I am seeing Double out of my right eye And my eye is Stuck to the upper Right. This Could potentially be PERMANENT eye damage. This grievance is being filed late due to there being None in the Unit for Weeks As I've been Asking - Grievances Finally brought in today

_Signature of Prisoner_      10/3/2019
     **Date**

BEFORE FILING A GRIEVANCE WITH THE GRIEVANCE REVIEW OFFICER, YOU MUST HAVE MADE AN ATTEMPT AT AN INFORMAL RESOLUTION BY SUBMITTING THIS FORM TO A SUPERVISOR DESIGNATED BY THE FACILITY CHIEF ADMINISTRATIVE OFFICER AS HAVING JURISDICTION OVER THE SUBJECT WITHIN FIVE (5) DAYS OF THE MATTER BEING GRIEVED.

AVERILL      _(signature)_      10-3-2019
**Printed Name of Supervisor** (or HSA, if applicable)   **Signature of Supervisor** (or HSA, if applicable)   **Date of Receipt of Form**

☐ Complaint Resolved. Describe resolution, including implementation date: _____

**Signature of Staff Resolving Complaint**      **Signature of Prisoner Agreeing to Resolution**

☒ Complaint Not Resolved. Describe actions taken in attempt to resolve: No ENEMY ISSUE Document Forms were Filled out. THERE WAS NO DOCUMENTED REASON Both INMATES INVOLVED THAT WOULD HAVE PREVENTED THIS INCIDENT FROM HAPPENING. ← (on 8/26/19, c/o Ried documented the threat in CORIS under Uffelman's Name

SGT AVERILL      10-5-2019 2100
**Signature of Staff Attempting Resolution**      **Date Form Returned to Prisoner**

PLEASE NOTE: on 9/14 in the evening Prior to incident I told this Sergeant and C/O McArthur this Prisoner had threatened to Kill me. This Sergeant did NOT properly investigate this! He obviously failed to Review the Unit Log Book for Around or About August 26 when this Prisoner was moved out Once for threatening to Kill me.

Original to Grievance Officer
Prisoner to keep copy
Prisoner Grievance Form     DOC Form AF - 29.1 and 29.2 – A – A
Attachment A     2/17/17R